**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION (at Lexington)**

| | | |
|---|---|---|
| **MONTRIAL JOHNSON** | : | **Case No. 5:26-cv-00244-KKC** |
| | : | |
| **PLAINTIFF,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL DICK, *et. al.*** | : | |
| | : | |
| **DEFENDANTS** | : | |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff, through Counsel, provides this Memorandum in Opposition to Defendants' Motions to Dismiss. (Doc. 8; Doc. 9).

## I. The Motions are Moot because of the Amended Complaint

Plaintiffs filed an amended complaint on August 13, 2026. (Doc. 10). Generally, an amended complaint supersedes the original complaint, and renders moot any motions to dismiss the original complaint. *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021); *Kentucky Press Ass'n, Inc. v. Kentucky*, 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005) (*citing Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). Accordingly, Defendants motions are moot.

## II. Standard of Review

FRCP 12(b)(6) motions require the Court to take all factual allegations from the Amended Complaint, accept them as true, and draw all reasonable inferences therefrom in favor of Plaintiff. *Royal Truck & Trailer Sales and Serv., Inc. v. Kraft*, 974 F.3d 756, 758 (6th Cir. 2020). It also requires reading the amended complaint as a whole, as opposed to selectively

reading passages or portions. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011); *England v. Denso Int'l Am. Inc.*, 136 F.4th 632, 636 (6th Cir. 2025).

Moreover, liberal notice pleading applies to these claims, as opposed to, for instance, more stringent requirements that apply to fraud claims. *Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012); *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004).

## III. Facts

On September 13, 2025, at approximately 11:28 p.m., Officer Michael Dick, then employed with the Lexington Fayette Urban County Government ("Lexington"), initiated a stop of Plaintiff Montrial Johnson's vehicle; Mr. Johnson was driving. (Am. Compl., Doc. 10, ¶ 9, PageID#57). For the avoidance of all doubt, Mr. Johnson committed no traffic violations, there was no probable cause for the stop, and his driving was unremarkable. (*Id.* at ¶ 10). Officer Dick falsely contended that the stop was for a violation of KRS 189.125, a seat belt violation. (*Id.* at ¶ 11).

Immediately on contact with Mr. Johnson, Officer Dick asked to search the vehicle, and Mr. Johnson declined, at which time Officer Dick responded that he would have a K-9 unit respond to provide the LPD grounds to search the vehicle. (*Id.* at ¶ 12).

Officer Dick, rather than proceeding to write a seat belt citation, instead contacted a K-9 unit, and then Officer Dick sat in his vehicle, without undertaking any activities to write a citation or any tasks otherwise associated with the completion of the writing of a ticket for a seat belt violation, and continued the detention of Mr. Johnson, at the side of the road, for approximately 16 minutes until the K-9 officer (LPD Officer Christopher Murner) showed up. (*Id.* at ¶ 13).

Murner then walked his K-9 around Mr. Johnson's vehicle for approximately three minutes (for a total of 19 minutes without any traffic citation activity by Officer Dick), where the dog did not alert. (*Id.* at ¶ 14). During the K-9 walk-around, the handler had the K-9 jump up on Mr. Johnson's vehicle, which scratched it; this activity was foreseeable as a consequence of Officer Dick's actions. (*Id.* at ¶ 15).

After the K-9 failed to alert, and 19 minutes into the stop, Dick then, for the first time, began traffic citation activities, and instructed Mr. Johnson to obtain proof of vehicle insurance, which Mr. Johnson promptly provided, then returned to his vehicle, permitted Mr. Johnson to return to his vehicle, and wrote the citation in approximately five minutes. (*Id.* at ¶ 16, PageID#58). That five minute period is the reasonable and actual time that it takes to write a traffic citation. *Id.*

When such a seizure through an automobile stop occurs, it must be based on reasonable suspicion and Dick had no such reasonable suspicion. (*Id.* at ¶ 17). The rights at issue were clearly established in *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). *Id.*

Dick's detention of Mr. Johnson improperly and unconstitutionally expanded the scope of the investigation, in contravention of Mr. Johnson's constitutional rights under clearly established law. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015), *United States v. Whitley*, 34 F.4th 522 (6th Cir. 2022), and *Hernandez v. Boles*, 949 F.3d 251, 257 (6th Cir. 2020). (*Id.* at ¶ 18). To be clear: there was no probable cause for the seatbelt charge or stop, and they were all instituted with the actionable, requisite malice. (*Id.* at ¶ 19).

As a consequence of the foregoing, Plaintiff incurred damage, including loss of his liberty for the 19 minute period he was detained without any traffic citation activity, damage to

his vehicle from the K-9, and some emotional distress in an amount to be proven at trial, and such other damages as might be proven at trial. (*Id.* at ¶ 20).

Facts relating to *Monell* Liability for Lexington

In the last ten years, and prior to the stop and detention of Mr. Johnson in this matter, there have been more than thirty documented Fourth Amendment violations by Lexington Police Officers related to prolonged stops or stops without probable cause establishing a policy and custom for each of these Fourth Amendment violations. (*Id.* at ¶ 21). Lexington was aware of each of these incidents, and many of them were the subject of reported Court findings of Fourth Amendment violations. (*Id.* at ¶ 21; PageID#58-59). And, for each, they evince: (i) a lack of training on the prolonging of traffic stops, in contravention of *Rodriguez*, by Lexington, and a failure to take any corrective action by Lexington despite these incidents all of which show that the City had and still has a policy of inadequate training or supervision, with respect to Fourth Amendment violations, and have failed to train Dick and other officers regarding permissible stops and reasonable suspicion, despite a pattern of complaints and other evidence, including reported court decisions, involving Dick and other officers committing Fourth Amendment violations related to stops and prolonged detentions, before this incident; (ii) they demonstrate that the actions complained herein were done pursuant to an illegal official policy of the Lexington; (iii) that the officials within Lexington with final decision-making authority ratified and/or directed the complained of illegal actions including the Chief of Police, including dismissing and whitewashing complaints related to each of the documented incidents in the next paragraph, as well as more than two dozen complaints received from the public related to improper stops and detentions to conduct dog sniffing operations; (iv) that each of the incidents in the next paragraph, all of which resulted in neither discipline nor corrective action,

demonstrate that the Lexington had, at all times relevant hereto, and may still have a custom of tolerance or acquiescence of federal rights violations. (*Id.* at ¶ 21; PageID#59).

Those prior incidents, all committed and documented prior to the September 15, 2025 incident herein, include: (i) those articulated by the Kentucky Supreme Court in *Commonwealth v. Clayborne*, 2020-SC-0058-DG, 635 S.W.3d 818 (Ky. 2021), and the stop by Lexington Police Officer Ryan Nichols on April 21, 2017; (ii) those articulated by the Kentucky Supreme Court in *Moberly v. Commonwealth*, 551 S.W.3d 26 (Ky. 2018), and the stop and detention by Officer Lexington Police Officer Roman Sorrell in December, 2013; (iii) those documented by the Fayette Circuit Court relative to the February 15, 2023 stop of Martavous Taylor by Lexington Police Officer Kean (which resulted in a suppression motion being granted by the Fayette Circuit Court on March 6, 2026), *Commonwealth v. Taylor*, 2026 Ky. Cir. LEXIS 1; (iv) the August 18, 2020 stop and detention of Tony Hale by Lexington Detective Brendan Hazelwood and other detectives of the Lexington Police Department, along with officers Dan Hempel and Officer Zachary Flowers, as set forth in *Hale v. Commonwealth*, 2023 Ky. App. Unpub. LEXIS 291 (Ky. App. 2023); (v) the April, 2017 stop and prolonged detention of LeeCole Mitchell by Lexington Officer Nathan Barks and Lexington Officer Eldar Agayev as set forth and documented by the Kentucky Supreme Court in *Commonwealth v. Mitchell*, 610 S.W.3d 263 (Ky. 2020); (vi) the May, 2017 stop and prolonged detention of Domonick Deonte Jones by Lexington Officer Jesse Mascoe, as set forth and documented by the Kentucky Court of Appeals in *Jones v. Commonwealth*, 2019 Ky. App. Unpub. LEXIS 387 (Ky. App. 2019). (*Id.* at ¶ 22; PageID#59-60).

Again, and despite each of the foregoing documented instances, by Courts, and with knowledge of same, Lexington has refused and continues to refuse to take any corrective action.

(*Id.* at ¶ 23; PageID#60). Further, and in addition to the Court documented violations above, Lexington has received, in the preceding 10 years, more than 30 complaints from citizens that all involve, and substantiated by video evidence, stops conducted without probable cause, and prolonged detentions that violate the Fourth Amendment and *Rodriguez*. *Id.* Lexington and its Chief Police, in response to these complaints, has repeatedly white-washed these complaints, finding no violations when there is a clear pattern of violations. *Id.* This failure to investigate or discipline, or to make any meaningful policy reforms, suggests a conscious choice to allow the pattern of misconduct to continue. *Id.*

Therefore and for the reasons and based on the facts set forth in the preceding paragraphs, Defendant, Lexington is likewise liable for the foregoing Fourth Amendment violations, under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) for the foregoing First Amendment violations, because (i) the actions complained were done pursuant to an illegal official policy of the Lexington, including as evidenced by the fact that the Lexington Chief of Police and other supervisors and command staff, signed off on the activities herein and other similar activities before the incident in question; (ii) the officials with final decision-making authority ratified and/or directed the complained of illegal actions including the Chief of Police, including dismissing and whitewashing at least twelve other complaints relative to Officer Dick and others involved in the stop of Mr. Johnson, prior to this incident, all complaints related to prolonged stops, which actually occurred, and the Chief of Police dismissed a complaint by Mr. Johnson in this case relative to the stop in this case; (iii) the City had and may still have a policy of inadequate training or supervision, with respect to Fourth Amendment violations, and have failed to train Dick and other officers regarding permissible stops and reasonable suspicion, despite a pattern of complaints against Dick and other officers before this incident; and (iv) the Lexington

had, at all times relevant hereto, and may still have a custom of tolerance or acquiescence of federal rights violations. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). (*Id.* at ¶ 24; PageID#61).

The foregoing also demonstrate (i) the existence of a clear and persistent pattern of illegal activity by Lexington and its police; (2) notice or constructive notice on the part of Lexington; (3) Lexington's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that this custom by Lexington was the moving force or direct causal link in the constitutional deprivation of Plaintiff's rights by Lexington – without this pattern and practice, Mr. Johnson's constitutional rights would not have been violated by Officer Dick. *Lipman v. Budish*, 974 F.3d 726, 748 (6th Cir. 2020) (six prior incidents sufficient). A municipality's failure to act in the face of obvious constitutional violations is properly treated as the cause of subsequent, similar violations. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989). (*Id.* at ¶ 25; PageID#61-62). Lexington is thus liable under *Monell* for the violations complained of for the illegal stop with probable cause and for the illegal and prolonged detention. (*Id.* at ¶ 26; PageID#62).

## IV. Law and Argument

To begin, Defendants attempt to cast the facts in the light most favorable to him, to draw reasonable inferences in his favor, and to ignore salient and material factual allegations that demonstrate he is liable. That, of course, is improper under a FRCP 12(b)(6) motion and standard. *Kraft*, 974 F.3d 756, 758. Indeed, Officer Dick's own motion explicitly reveals that he is taking liberty with the facts and asking the court to draw reasonable inferences in Dick's favor: "reasonable inferences dictate that Officer Dick likely continued his investigation from his

vehicle by running Plaintiff's license plate, and further researching Plaintiff's name through relevant government databases." (Motion, Doc. 8 at 8). That is not permissible – the inferences must be drawn in Plaintiff's favor, not Defendants. *Kraft*, 974 F.3d 756, 758. And that is especially not permissible when, as here, there are express allegations that indicate that this did not occur. (Am. Compl., Doc. 10, at ¶¶ 12-13, PageID#57).

**A. Plaintiff adequately plead a Fourth Amendment claim for the improper stop**

Here, there are express allegations that Mr. Johnson committed no traffic offices and that there was neither probable cause nor reasonable suspicion for the stop. (Am. Compl., Doc. 10, at ¶¶ 9-11, 17, 28, PageID#57-58, 62). "An ordinary traffic stop by a police officer is a 'seizure'within the meaning of the Fourth Amendment." *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012). Different standards apply for ascertaining whether a traffic stop comports with the Constitution depending on the nature of the alleged infraction. *See, e.g., United States v. Collazo*, 818 F.3d 247, 253-54 (6th Cir. 2016). Generally, an officer needs probable cause to stop a vehicle for a civil infraction and only reasonable suspicion to stop a vehicle for a criminal violation. *Id.* "Probable cause exists where 'the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009) (alterations in original) (*quoting Brinegar v. United States*, 338 U.S. 160, 175-176 (1949)). Reasonable suspicion exists if, under the totality of the circumstances, the officer has "'specific facts' that 'would lead a reasonable officer to suspect illicit activity.'" *United States v. Winters*, 782 F.3d 289, 298 (6th Cir. 2015). It was clearly-established that an officer needs either probable

cause or reasonable suspicion to conduct a traffic stop. *See, e.g., Collazo*, 818 F.3d at 253-57; *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

**B. Plaintiff adequately plead a Fourth Amendment claim for the extended detention for the dog sniff**

Defendants argue that the 20-minute extended detention here was reasonable to conduct the dog sniff. (Motion, Doc. 8 at 9). That, of course, runs headlong into clearly established law to the contrary. *Rodriguez v. United States*, 575 U.S. 348, 354, 357 (2015) (seven or eight minute detention violated Fourth Amendment for dog sniff, and in fact adding any time to the stop to complete a dog sniff violates the Fourth Amendment); *Hernandez v. Boles*, 949 F.3d 251, 257 (6th Cir. 2020) (there is a Fourth Amendment violation if the stopped party can show "either that the [police activity] was not 'tied to the traffic infraction' or that the traffic stop reasonably should have been' already completed"). Applying *Boles*, of course, there are both allegations here: that Dick sat in his vehicle doing nothing while waiting for the K-9 (Am. Compl., Doc. 10, at ¶¶ 12-13, PageID#57), and, 19 minutes into the stop, Dick actually began traffic citation activities and completed them 5 minutes later, which was the actual and reasonable time necessary to write the traffic citation. (*Id.* at ¶ 16, PageID#58).

Under *Boles* and *Rodriguez*, then, the detention was unconstitutional based on clearly established published case law from the Sixth Circuit and Supreme Court.

**C. Plaintiff adequately plead the *Monell* Claim against Lexington**

A municipality is a "person" under 42 U.S.C. § 1983, and so can be held liable for constitutional injuries for which it is responsible. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978). A municipality may become liable under a §1983 claim if the alleged federal violation occurred because of a municipal policy or custom, *Monell,* 436 U.S. 658, 694, and for harms

caused by employees for whom the municipality has failed to provide adequate training, *see Arrington-Bey v. City of Bedford Heights,* 858 F.3d 988, 995 (6th Cir. 2017).

A city may be sued for having caused a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Adkins v. Bd. of Educ. of Magoffin County, Ky.*, 982 F.2d 952, 957 (6th Cir.1993). Since such bodies can act only through natural persons, the critical question is whether the person committing the act did so pursuant to official policy. *Id.* A formally adopted policy is not required; established usage or custom may be sufficient. *Id.*

To demonstrate *Monell* liability, a Plaintiff must (1) identify the policy or custom that injured him; (2) connect the policy to the city or county; and (3) show that his particular injury was incurred due to execution of that policy or custom. *Id.* There are four methods of proving an unlawful policy or custom: (1) showing an illegal official policy or legislative enactment; (2) demonstrating that an official with final decision-making authority ratified illegal actions; (3) showing a policy of inadequate training or supervision; or (4) demonstrating a custom of tolerance of or acquiescence to federal rights violations. *Wright v. City of Euclid*, 962 F.3d 852, 880 (6th Cir. 2020).

"[A] city may be liable under *Monell* for a policy of permitting constitutional violations regardless of whether the policy is written." *Id.* at 830; *see Monell*, 436 U.S. at 691 ("Congress included customs and usages [in § 1983] . . . . Although not authorized by written law, such practices . . . could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." (*quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970))). When proceeding under the first theory of *Monell* liability, Plaintiff must show that there were "formal rules or understandings—often but not always committed to writing—that [were]

intended to, and [did], establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).

**Official policy**: Here, of course, there are significant factual allegations directed to custom and usage of Lexington. In the last ten years, and prior to the stop and detention of Mr. Johnson in this matter, there have been more than thirty documented Fourth Amendment violations by Lexington Police Officers related to prolonged stops or stops without probable cause establishing a policy and custom for each of these Fourth Amendment violations. (Am. Compl., Doc. 10 at ¶ 21, PageID#58). Lexington was aware of each of these incidents, and many of them were the subject of reported Court findings of Fourth Amendment violations. (*Id.* at ¶ 21; PageID#58-59). Those prior incidents, all committed and documented prior to the September 15, 2025 incident herein, include: (i) those articulated by the Kentucky Supreme Court in *Commonwealth v. Clayborne*, 2020-SC-0058-DG, 635 S.W.3d 818 (Ky. 2021), and the stop by Lexington Police Officer Ryan Nichols on April 21, 2017; (ii) those articulated by the Kentucky Supreme Court in *Moberly v. Commonwealth*, 551 S.W.3d 26 (Ky. 2018), and the stop and detention by Officer Lexington Police Officer Roman Sorrell in December, 2013; (iii) those documented by the Fayette Circuit Court relative to the February 15, 2023 stop of Martavous Taylor by Lexington Police Officer Kean (which resulted in a suppression motion being granted by the Fayette Circuit Court on March 6, 2026), *Commonwealth v. Taylor*, 2026 Ky. Cir. LEXIS 1; (iv) the August 18, 2020 stop and detention of Tony Hale by Lexington Detective Brendan Hazelwood and other detectives of the Lexington Police Department, along with officers Dan Hempel and Officer Zachary Flowers, as set forth in *Hale v. Commonwealth*, 2023 Ky. App. Unpub. LEXIS 291 (Ky. App. 2023); (v) the April, 2017 stop and prolonged detention of

LeeCole Mitchell by Lexington Officer Nathan Barks and Lexington Officer Eldar Agayev as set forth and documented by the Kentucky Supreme Court in *Commonwealth v. Mitchell*, 610 S.W.3d 263 (Ky. 2020); (vi) the May, 2017 stop and prolonged detention of Domonick Deonte Jones by Lexington Officer Jesse Mascoe, as set forth and documented by the Kentucky Court of Appeals in *Jones v. Commonwealth*, 2019 Ky. App. Unpub. LEXIS 387 (Ky. App. 2019). (*Id.* at ¶ 22; PageID#59-60).

Again, and despite each of the foregoing documented instances, by Courts, and with knowledge of same, Lexington has refused and continues to refuse to take any corrective action. (*Id.* at ¶ 23; PageID#60). Further, and in addition to the Court documented violations above, Lexington has received, in the preceding 10 years, more than 30 complaints from citizens that all involve, and substantiated by video evidence, stops conducted without probable cause, and prolonged detentions that violate the Fourth Amendment and *Rodriguez*. *Id.* Lexington and its Chief Police, in response to these complaints, has repeatedly white-washed these complaints, finding no violations when there is a clear pattern of violations. *Id.* This failure to investigate or discipline, or to make any meaningful policy reforms, suggests a conscious choice to allow the pattern of misconduct to continue. *Id.*

Such facts were sufficient in *Wright*, 962 F.3d 852, 880, to establish an official policy and they are sufficient here.

**<u>Ratification by final decision maker</u>**: Under this jurisprudence, the actions of a single official can also create liability for the local government where that official has "final policymaking authority." *Id.* "[W]hether an official has such final authority is a question of state law." *Id.* (*citing City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)).

In the last ten years, and prior to the stop and detention of Mr. Johnson in this matter, there have been more than thirty documented Fourth Amendment violations by Lexington Police Officers related to prolonged stops or stops without probable cause establishing a policy and custom for each of these Fourth Amendment violations. (Am. Compl., Doc. 10, at ¶ 21, PageID#58). Lexington was aware of each of these incidents, and many of them were the subject of reported Court findings of Fourth Amendment violations. (*Id.* at ¶ 21; PageID#58-59). And, for each, they evince:… (iii) that the officials within Lexington with final decision-making authority ratified and/or directed the complained of illegal actions including the Chief of Police, including dismissing and whitewashing complaints related to each of the documented incidents in the next paragraph, as well as more than two dozen complaints received from the public related to improper stops and detentions to conduct dog sniffing operations. *Id.*

A plaintiff can also establish municipal liability by showing that the municipality ratifies the unconstitutional acts of its employees by failing to meaningfully investigate and punish allegations of unconstitutional conduct. *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1247-48 (6th Cir. 1990). As the Sixth Circuit explained in *Wright*:

> Wright points us to Chief Meyer's lack of investigation and discipline in the other high-profile use-of-force cases involving Euclid police officers, but those instances occurred after Wright's encounter with Flagg and Williams and cannot show that Meyer's failure to investigate and punish the officers involved in those uses of force led in any way to Wright's injuries. However, Murowsky testified that he had never heard of a use of force incident by a Euclid officer that seemed inappropriate to him. That too moves the needle so that a reasonable jury could decide that use of excessive force is ratified by the department. A reasonable jury could likewise find that Meyer and Murowsky's seeming failure to ever meaningfully investigate excessive force complaints rises to the level of a ratification of use of force by a policymaker. *Wright*, 962 F.3d 852, 880.

As in *Wright*, where the Chief of Police failed to take action despite a pattern of prior incidents, the allegations set forth above demonstrate the same here. Thus, a ratification theory of Monell liability was also adequately plead.

The Sixth Circuit has held that municipal liability may attach when an official with final decision-making authority and a duty to know and act upon unconstitutional conduct fails to investigate or correct the unconstitutional conduct. *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985); *see also Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989). Here, of course, the factual allegations indicate that this is present in this case.

**Inadequate Training or Supervision**: Inadequate training and supervision was also present. In the last ten years, and prior to the stop and detention of Mr. Johnson in this matter, there have been more than thirty documented Fourth Amendment violations by Lexington Police Officers related to prolonged stops or stops without probable cause establishing a policy and custom for each of these Fourth Amendment violations. (Am. Compl., Doc. 10, at ¶ 21, PageID#58). Lexington was aware of each of these incidents, and many of them were the subject of reported Court findings of Fourth Amendment violations. (*Id.* at ¶ 21; PageID#58-59). And, for each of them, they evince: (i) a lack of training on the prolonging of traffic stops, in contravention of *Rodriguez*, by Lexington, and a failure to take any corrective action by Lexington despite these incidents all of which show that the City had and still has a policy of inadequate training or supervision, with respect to Fourth Amendment violations, and have failed to train Dick and other officers regarding permissible stops and reasonable suspicion, despite a pattern of complaints and other evidence, including reported court decisions, involving Dick and other officers committing Fourth Amendment violations related to stops and prolonged detentions, before this incident.. (*Id.* at ¶ 21; PageID#59).

Those prior incidents, all committed and documented prior to the September 15, 2025 incident herein, include: (i) those articulated by the Kentucky Supreme Court in *Commonwealth v. Clayborne*, 2020-SC-0058-DG, 635 S.W.3d 818 (Ky. 2021), and the stop by Lexington Police

Officer Ryan Nichols on April 21, 2017; (ii) those articulated by the Kentucky Supreme Court in *Moberly v. Commonwealth*, 551 S.W.3d 26 (Ky. 2018), and the stop and detention by Officer Lexington Police Officer Roman Sorrell in December, 2013; (iii) those documented by the Fayette Circuit Court relative to the February 15, 2023 stop of Martavous Taylor by Lexington Police Officer Kean (which resulted in a suppression motion being granted by the Fayette Circuit Court on March 6, 2026), *Commonwealth v. Taylor*, 2026 Ky. Cir. LEXIS 1; (iv) the August 18, 2020 stop and detention of Tony Hale by Lexington Detective Brendan Hazelwood and other detectives of the Lexington Police Department, along with officers Dan Hempel and Officer Zachary Flowers, as set forth in *Hale v. Commonwealth*, 2023 Ky. App. Unpub. LEXIS 291 (Ky. App. 2023); (v) the April, 2017 stop and prolonged detention of LeeCole Mitchell by Lexington Officer Nathan Barks and Lexington Officer Eldar Agayev as set forth and documented by the Kentucky Supreme Court in *Commonwealth v. Mitchell*, 610 S.W.3d 263 (Ky. 2020); (vi) the May, 2017 stop and prolonged detention of Domonick Deonte Jones by Lexington Officer Jesse Mascoe, as set forth and documented by the Kentucky Court of Appeals in *Jones v. Commonwealth*, 2019 Ky. App. Unpub. LEXIS 387 (Ky. App. 2019). (*Id.* at ¶ 22; PageID#59-60).

Again, and despite each of the foregoing documented instances, by Courts, and with knowledge of same, Lexington has refused and continues to refuse to take any corrective action. (*Id.* at ¶ 23; PageID#60). Further, and in addition to the Court documented violations above, Lexington has received, in the preceding 10 years, more than 30 complaints from citizens that all involve, and substantiated by video evidence, stops conducted without probable cause, and prolonged detentions that violate the Fourth Amendment and *Rodriguez*. *Id.* Lexington and its Chief Police, in response to these complaints, has repeatedly white-washed these complaints,

finding no violations when there is a clear pattern of violations. *Id.* This failure to investigate or discipline, or to make any meaningful policy reforms, suggests a conscious choice to allow the pattern of misconduct to continue. *Id.*

A "municipality may be liable for inadequately training its employees where 'in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In such a case, ***the failure to train its employees itself amounts to an unconstitutional policy***." *Carpenter v. City of Cincinnati*, 2003 U.S. Dist. LEXIS 7105, at *33 (S.D. OH. Apr. 17, 2003), *quoting City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Matters related to stops and arrests and prolonged detention are areas in which the need for training is so obvious that the inadequacy could in itself be an unconstitutional policy. (*Id.*, at *33-35). Here, of course, Plaintiffs plead that there is no such training, and that is sufficient for purposes of a FRCP 12(b)(6) motion response.

**Custom of tolerance or acquiescence to federal civil rights violations**: Finally, as noted above, a custom of tolerance or acquiescence to federal civil rights violations is grounds for *Monell* liability. *Red Zone 12 LLC v. City of Columbus*, 758 Fed. Appx. 508, 515 (6th Cir. 2019) (*quoting Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). Jackson v. City of Cleveland, 925 F.3d 793, 828 (6th Cir. 2019).

Here, of course, Plaintiff has alleged just such a custom of tolerance or acquiescence to federal civil rights violations, citing a litany of prior incidents, and no action or, even worse, approval by the Chief of Police of such violations. (Am. Compl., Doc. 10, at ¶¶ 21-26).

**Causation**: Plaintiff likewise alleged sufficient facts to establish causation. The foregoing also demonstrate (i) the existence of a clear and persistent pattern of illegal activity by

Lexington and its police; (2) notice or constructive notice on the part of Lexington; (3) Lexington's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that this custom by Lexington was the moving force or direct causal link in the constitutional deprivation of Plaintiff's rights by Lexington – without this pattern and practice, Mr. Johnson's constitutional rights would not have been violated by Officer Dick. (Am. Compl., Doc. 10 at ¶¶ 21-26); *Lipman v. Budish*, 974 F.3d 726, 748 (6th Cir. 2020) (six prior incidents sufficient). A municipality's failure to act in the face of obvious constitutional violations is properly treated as the cause of subsequent, similar violations. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989). (*Id.* at ¶ 25; PageID#61-62). Lexington is thus liable under *Monell* for the violations complained of for the illegal stop with probable cause and for the illegal and prolonged detention.

## V. Conclusion

Defendants' Motions to Dismiss (Doc. 9; Doc. 10) must, therefore, be denied.

Respectfully submitted,

/s/ Christopher Wiest
Christopher Wiest (KY 90725)
Theodore Roberts (KY 100610)
Chris Wiest, Atty at Law, PLLC
50 E. Rivercenter Blvd., Ste. 1280
Covington, KY 41011
513/257-1895 (c)
chris@cwiestlaw.com
**Attorney for Plaintiff**

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon all Counsel of record, by filing same via CM/ECF, this 14 day of August, 2026.

/s/ Christopher Wiest
Christopher Wiest (KY 90725)